Curia, per Habper, Ch.
I believe that the grounds on which I refused to suspend the sale on the application of Ta-veau and wife, were assumed somewhat hastily and unadvisedly.
Chancellor Dunkin’s decretal order of July, 1843, certainly directs one moiety of the land and slaves to be allotted to Elias Nonus Ball, specifically, and not otherwise, the other moiety to be divided between the parties entitled, and if the commissioners find it disadvantageous to divide specifically, then as to that moiety to recommend a different method, as provided by the Act of Assembly. This I think the obvious import of the decretal order alone, unconnected with the opinion which precedes it. Though the decretal order is alone the proper decree, yet, if there be any thing doubtful in its terms, it may be well construed with reference to the opinion, and we should, as far as practicable, give it a construction in conformity to the opinion. Thus considered, there can be no doubt with respect to the order ill question. The Chancellor, upon full consideration, decides explicitly that he has no power to order a sale of the infant’s portion of the estate, and that the same must be allotted to *385 him specifically, and by metes and bounds; and if this order be regarded as an adjudication, I am of opinion that it is conclusive upon the parties, and was not reversed or modified by the judgment of the Court of Appeals.
I do not question but that it is within the competency of the court to make such modifications of a decree as the justice and merits of the cause may require, on its own motion, though the particular matter may not have been the subject of appeal. When a decree is said to be a affirmed, this may well mean that it is affirmed with respect to the matters appealed from, and is not inconsistent with the modification of the decree in other particulars. But I do not think this has been done in the present instance. The order of the appeal court directing the cause to be remanded, for the purpose of making the necessary orders to effect partition by sale or otherwise, conformably to the decrees heretofore made, must refer to this decree, if it be a decree, and the discretion allowed must respect the moiety with regard to which the Chancellor had admitted a discretion.
I am of opinion, however, that the decretal order, so far as it respected the manner of partition, was not a judicial, but an administrative order, subject to the control of the court, and that is "was modified and controlled by the subsequent order of-Chancellor Johnson.
The distinction between these sorts of orders is too familiar to need much illustration.
To render an order judicial, it must be one which affects the merits of the cause. Nothing is more common than that during the progress of a cause, property should be sold for its preservation, or some motive of convenience, thus changing the form of the property, without deciding on the respective rights of the parties in relation to it. It is not doubted, but that in such a case, if any change of circumstances should occur between the making of such an order and its execution, to render the sale unadvisable, it might be rescinded. So in the case of orders for the sale of infants’ property, there are many such instances. It has been determined that the order confirming the master’s report of sales, or of money paid by him, is not a judicial, but a ministerial order, and you may allege against it if the report be not true.
To determine whether the party is entitled to a partition, and in what proportion, is matter for judicial enquiry. In what *386 manner he should be put in possession of his interest, is matter for administrative discretion.
Some difficulty arises, and there may be an appearance of refining in the views taken, from the circumstance that the order directing the writ, also decides the merits. If the decr-ee of Chancellor Dunkin had simply declared and adjudged Elias Nonus Ball to be entitled to a moiety of the estate, and to have a present right of partition, and this had been affirmed on appeal, and the cause remanded for the necessary order, its administrative character might have been more readily perceived. What were the matters in issue before Chancellor Dunkin 7 Undoubtedly to what portion of the estate the infant was entitled, and whether he was entitled to immediate partition. In what manner, or in what form, his portion of the estate should be allotted to him, was not in issue ; and can that be regarded as a judicial decision which relates to a matter not in issue, though the Chancellor may have expressed a legal opinion in relation to it ? It was a direction for carrying the decree into effect. To remove and appoint trustees as exigencies may require, is a function of this court. The laws on this subject have varied in this State, and elsewhere. Suppose, on application' for the purpose, a judge to decide, on consideration of the law, that he has no power to appoint or remove a particular trustee, and to become afterwards convinced of his error, and that he has such authority, may he not then, on sufficient shewing, grant the order he has before refused 7 — yet this he could not do, if the former order on the subject were an adjudication.
If by some arrangement of the parties, and in pursuance of an order to that effect, a writ of partition were issued requiring the commissioners to make partition among all the parties, specifically, by metes and bounds, this, in effect, would mean no more than the writ in this case, and in the common case, directing them to make partition ; yet can any one doubt the power of the court to make a different order, upon the return of the commissioners that they could not make such return without injury to the parties 1
Might not the parties vary their arrangement 7 During the present sitting, an order of Chancellor DeSaussure has been before us, in a case where there were two plantations belonging to an estate, directing one plantation to be allotted to one dis-tributee and the other to the other. If the commissioners had returned that one was entirely unsuitable for the purposes of a *387 plantation, and that the other could be conveniently divided into two, might not the former order have been modified ?
I have spoken of the power of the court to modify or rescind an administrative order. It is hardly necessary to say that it makes no difference by what Judge the court is represented, whether the Judge who made the former order, or another. There may be greater delicacy in one case, but the authority is the same: It is, as I have said, only on a change of circumstances that the court will entertain a motion to modify or rescind a former order. This is because it will not be harrassed by a perpetual reconsideration of the same matter on the same grounds, — but if a Judge should capriciously, and without any change of circumstances, so modify or rescind, the last or rescinding order must prevail and continue valid till itself reversed.
Then the question arises with respect to the power of the court to sell for the purpose of partition, in any other case than that of intestates' estates. Undoubtedly our Courts of Chancery have assumed jurisdiction in various instances, not warranted by the rules and practice of the high Court of Chancery of South Britain, to which, by the Act of Assembly of 1721, they are directed to conform. Yet, where such jurisdiction has been long exercised — where, on the faith of decisions again and again repeated, and on the authority of law regarded as being so firmly settled as not to be questioned — titles have accrued, and money has been paid or invested ; thus involving, perhaps, the titles of a large portion of the property of the country, we should be guilty of far bolder and more mischievous usurpation, to resort to what we might conceive to be the true and primative practice, than the Judges who introduced the practice which we find established. It is not questioned, that by the rules and practice of the English Court of Chancery, it has no power to direct the sale of lands for the purpose of partition; and according to many of the cases cited in argument, much hardship and injustice have been suffered, from the want of such authority. The case of Dinkle vs. Timrod, 1 Dess. 109, is an authority that the court exercised the jurisdiction to make such sales, long before our Act of 1791, authorizing them in the case of intestates’ estates ; and before the Act, the court certainly had equal jurisdiction in every other case of tenancy, or tenancy in common, as in that of intestates’ estates. It exercised, also, jurisdiction in making partition of slaves, for which, of course, it could de *388 rive no authority from the English law. It is not questioned, but that the jurisdiction has been exercised familiarly and habitually, for the greater portion of a century, and I believe there is no lawyer at the bar, or Judge on the bench, who cannot verify the prevalence of the practice, so far as his recollection extends. '
It is argued, however, that we can draw no conclusion from this established practice, as the jurisdiction appears to have been exercised by consent; at all events, we find no case in which the objection to its exercise has been made and overruled. It is one thing, that for a long time no case has arisen, or been prosecuted under a law ; and from such a negative shewing, we might not be authorized to pronounce the law obsolete or repealed. It is another thing, that the law should be regarded as so firmly settled, and familiarly known, that no one has thought of calling it in question, though cases may have again and again arisen, in which the parties must have been invited to make the objection, if they had supposed they could do so successfully. The selling of mortgaged land for the purpose of satisfying the mortgage, is utterly unknown to the practice of Westminister Hall. Yet this has obtained in our courts, time out of mind; and I believe no case can be found, in which the authority of the court to make such sales has been questioned, or an objection to its exercise suggested. I should as soon think of calling in question the court’s authority in one case as in the other. But the argument is entirely misconceived, with respect to the jurisdiction having been exercised by consent, and the practice having obtained sub silentio and without objection. When joint tenants, or tenants in common, are all of full age, they need no aid of the court to enable them to make partition, or to sell. If all consented, they might divide or convey as they pleased. It is only in the case of some of the parties refusing to consent, that they would find it necessary to resort to the court. When some of the parties are infants, it would be the duty of the court, if such sale were not authorized, to make the objection for them, if it were not otherwise taken in their behalf.
There are some other views which it is hardly necessary to take. The court may have extended the equity of the statute of 1791, in relation to intestates’ estates, to all other cases of joint tenancy, and tenancy in common, according to a well known practice of the English courts, as being “ within the mischief or cause of the making of the Act.” Co. Lit. 24, b. It would be *389 entirely analagous to the construction in Eyston vs. Studd, Plowd. 467, where the stat. 9 Ed. 3, c. 3, relating to executors, was extended to administrators ; or where a feoffment to defraud the lord was declared void, this was extended to all other conveyances, grant, fine, lease and release, die.
Whether we at this day, if the question were a new one, would give such extended construction to the statute, or not, we are not at liberty to disregard the construction of our predecessors, if they have given it.
It might be further remarked, also, that the words of the Act of 1791 are not necessarily' confined to the case of intestates’ estates. The words are that “ it shall and may be lawful for any person who may be entitled to a distributive share of any estate, real or personal, to have the writ of partition.” Now, the words “ distributive share” are commonly understood to relate to intestates’ estates, and in an Act providing for the distribution of intestates’ estates, this meaning might seem still more appropriate. Yet they are very capable of a different construction. Every tenant in common may very well be said to be entitled tó a distributive share of the common property ; and if courts heretofore have made this construction, I should not be prepared to pronounce it an erroneous one.
The order of Chancellor Johnson is affirmed.
Johnson and Johnston, CC. concurred.